UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | NO. 05-46 |
| CHARLES SYKES | SECTION: I |

### ORDER AND REASONS

Before the Court is a motion and supplemental motion to suppress evidence filed on behalf of defendant, Charles Sykes. For the following reasons, defendant's motions are **GRANTED IN PART AND DENIED IN PART**.

### *BACKGROUND*

The charges against defendant arise out of two separate incidents. The earlier charges relate to an investigation into the murder of Charles Henry on April 15, 2002, in the breezeway of 2135 Lebouef Court in the Fisher Housing Project, New Orleans, Louisiana. On May 7, 2002, investigators interviewed Jessie Dillon. Dillon reported that, at the time of the murder, he heard several gunshots and saw several people running from the scene of the crime. He identified two of the people running from the scene as "Mississippi" and "Sippy." Dillon stated that Sippy had a gun in his hand at the time; he explained that Sippy was the brother of Mississippi and had a prominent tattoo of the word "Outlaw" on his neck. Dillon further stated that Sippy, Mississippi, and another individual fled up the stairs to 2125 Lebouef Court, Apartment 3A, where Sippy and

Mississippi resided with their mother.[1]

The United States contends that, when presented with a photographic lineup, Dillon was able to identify the individual he saw carrying a gun from the scene of the murder. Detective Anthony Pardo, the detective assigned to investigate the homicide, testified that Dillon identified a photograph that the police assumed to be Charles Sykes. The individual in the picture had a tattoo of "Outlaw" visible on his neck; however, at the suppression hearing, both parties agreed that the photograph identified was not that of Charles Sykes, but Matthew Sykes, defendant's brother. Defendant notes that Matthew Sykes has a tattoo of the word "Outlaw" on his neck; both parties agreed at the hearing that defendant does not have any such tattoo on his neck.

Based on this information, on June 4, 2002, the New Orleans police department obtained a search warrant for 2125 Lebouef Court, Apartment 3A, to recover the murder weapon, ammunition, and documents of occupancy.[2] On the afternoon of June 6, 2002, the police also interviewed Edwin Brooks, who stated that he had witnessed the murder of Charles Henry. Brooks was shown the same photographic lineup that was shown to Dillon, and he made the same identification.

Later on June 6, 2002, the police effected a search of 2125 Leboeuf Court, Apartment 3A; they found defendant inside and arrested him. At the time of his arrest, defendant identified himself as Charles Sykes. Defendant alleges that, at this point, the police noticed or should have noticed that he did not have a tattoo on his neck. The police searched defendant incident to his arrest and found a clear plastic bag containing cocaine on his person. The police also recovered

---

[1] Rec. Doc. No. 47-8, pp. 3-4.

[2] Rec. Doc. No. 31-2, pp. 6-7.

additional drugs, three handguns, and other items associated with drug trafficking from the rest of the apartment. These drugs and guns form the basis of the charges in counts one, two, and three of the superseding indictment.

In a separate incident, on April 14, 2003, defendant was stopped by Detective Wayne Williams for failing to signal a lane change while operating a motor scooter in Gretna, Louisiana. After the traffic stop, Detective Williams performed a pat-down search of the defendant. During this search, the officer felt two small square objects in defendant's front pocket; the detective had defendant remove these objects, which were small bags containing marijuana. Detective Williams then searched under the seat of the motor scooter to find the vehicle's paperwork; in doing so, the officer found a handgun and additional drugs. These items form the basis of the charges in counts four, five, six, seven, and eight of the superceding indictment.

On September 8, 2006, defendant filed this motion to suppress.[3] Defendant later filed a supplemental motion to suppress evidence in light of the superceding indictment filed on September 22, 2006.[4] A hearing was conducted on October 19, 2006, at which time the United States offered Detective Pardo and Detective Williams for testimony.

*LAW AND ANALYSIS*

**I. Arrest on June 6, 2002**

Defendant makes several arguments to support the suppression of evidence recovered in connection with his June 6, 2002 arrest and subsequent search of the apartment. Defendant

---

[3] Rec. Doc. No. 31.

[4] Rec. Doc. No. 46.

argues that when the police noticed or, alternatively, failed to notice, that he did not have an "Outlaw" tattoo on his neck, their probable cause to arrest him for the murder of Charles Henry dissipated. Defendant argues that this lack of probable cause tainted the search of his person and that, therefore, the evidence recovered as a result of this search should be suppressed. Defendant also contends that the search of the apartment on June 6, 2002, pursuant to a warrant issued on June 4, 2002, for evidence relating to a murder committed on April 15, 2002, was improper because, by the time of the search, the information supporting the warrant was stale.

The United States contends that the search warrant was proper regardless of the validity of the identification because of the totality of the evidence. The United States further argues that the probable cause supporting the search warrant was separate and distinct from the probable cause that supported the search of defendant at the time of the search of the apartment. The United States insists that the probable cause supporting the search of defendant was based on additional evidence not contained within the search warrant.

    *A. Probable Cause*

    Summarizing the standard for probable cause to arrest, the Fifth Circuit wrote:

> Probable cause exists when the facts and circumstances within the arresting officer's personal knowledge, or of which he has reasonably trustworthy information, are sufficient to occasion a person of reasonable prudence to believe an offense has been committed. Probable cause is determined on the basis of facts available to the officer at the time of the arrest, and an officer may be shielded from liability even if he reasonably but mistakenly concludes that probable cause is present. Furthermore, probable cause may be supported by the collective knowledge of law enforcement personnel who communicate with each other prior to the arrest. We must stress, however, that while law enforcement personnel may rely on the totality of facts available to them in establishing probable cause, they also may not disregard facts tending to dissipate probable cause.

*Evett v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 330 F.3d 681, 688 (5th Cir. 2003) (internal citations and quotations omitted). "When the government searches or seizes a

defendant without a warrant, the government bears the burden of proving, by a preponderance of the evidence, that the search or seizure was constitutional." *United States v. Guerrero-Barajas*, 240 F.3d 428, 432 (5th Cir. 2001); *see also United States v. Rivas*, 157 F.3d 364, 368 (5th Cir. 1998); *United States v. Roch*. 5 F.3d 894, 897 (5th Cir. 1993).

In *Hill v. California*, 401 U.S. 797, 91 S. Ct. 1106, 28 L. Ed. 2d 484 (1971), the United States Supreme Court considered a case in which police had entered a house and arrested Miller, who fit the description of the man, Hill, that the police had probable cause to arrest. In affirming the California Supreme Court's decision to sustain both the arrest and the subsequent search of the house, the Court quoted the state court's language in concluding that "when the police have probable cause to arrest one party, and when they reasonably mistake a second party for the first party, then the arrest of the second party is a valid arrest." *Id.* at 802, 91 S. Ct. at 1110 (internal quotation and citation omitted). The Court found that, despite the mistaken identity, the police were justified in arresting Miller; the Court cited the similarity of the two men's appearances, the prevalence of aliases and false identifications, and inconsistencies in Miller's answers to police questioning. *Id.* at 803, 91 S. Ct. at 1110. In so ruling, the Court stressed that "sufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment." *Id.* at 804, 91 S. Ct. at 1111; *see also Illinois v. Rodriguez*, 497 U.S. 177, 196 n.2, 110 S. Ct. 2793, 2805, 111 L. Ed. 2d 148, 166 (1990) ("[T]he reasonableness of the arrest for which the police had probable cause was not undermined by the officers' factual mistake regarding the identity of the person arrested."); *United States v. Glover*, 725 F.2d 120, 122 (D.C. Cir. 1984) ("The arrest of a person who is mistakenly thought to be someone else is valid if the arresting officer (a) has probable cause to arrest the person sought, and (b) reasonably believed the person arrested was

the person sought.") (citing *Hill*, *inter alia*).

Similarly, this Court finds that the arrest of defendant, despite the confused identification, was objectively reasonable. In determining that probable cause existed to arrest Charles Sykes for the murder of Charles Henry, Detective Pardo reasonably relied on two witnesses who both chose the same photograph from a lineup. The Court finds that it was also reasonable for Detective Pardo to rely on information in the sheriff's computer files that erroneously identified the relevant photograph in the lineups as that of Charles Sykes. When Detective Pardo arrived at 2125 Lebouef Court, Apartment 3A, defendant identified himself as Charles Sykes. Detective Pardo reasonably believed that Charles Sykes was living in the apartment and that Charles Sykes was the person identified by the two witnesses.

It is of no great moment to the Court that the witnesses to the crime identified the suspect as having a tattoo. Detective Pardo testified that he could not be sure from the lineup photograph that the tattoo was permanent.[5] In addition, the arrest of Charles Sykes--which occurred after police forcibly opened two doors in the apartment--may not have presented conditions conducive to a thorough examination of the suspect before arrest. Considering the totality of the evidence presented, the Court finds that the police had sufficient probable cause to arrest defendant for the murder of Charles Henry.

Because the police searched defendant incident to a lawful arrest, the evidence recovered from this search need not be suppressed. *See United States v. Green*, 324 F.3d 375, 378 (5th Cir. 2003) ("The Supreme Court held that an officer making a lawful custodial arrest may search the person in custody and the area within his immediate control into which he might reach in order

---

[5] Suppression Hr'g Tr. at p. 34.

to obtain a weapon or to destroy evidence.") (internal quotations omitted); *see also United States v. Virgil*, 444 F.3d 447, 451 (5th Cir. 2006) ("Any arrest may be accompanied by a search 'incident to the arrest' of the immediate vicinity, limited to areas in which weapons might be found, regardless of probable cause or reasonable suspicion.") (citing *Maryland v. Buie*, 494 U.S. 325, 334, 110 S. Ct. 1093, 108 L. Ed. 2d 276 (1990)).

    B.  *Staleness of Search Warrant*

Defendant challenges the validity of the search warrant that police relied upon when they searched defendant's apartment. The affidavit supporting a search warrant enjoys a presumption of validity. *Franks v. Delaware*, 438 U.S. 154, 171, 98 S. Ct. 2674, 2684, 57 L. Ed. 2d 667 (1978). To defeat this presumption, defendant must show that "(1) allegations in a supporting affidavit were deliberate falsehoods or made with a reckless disregard for the truth, and (2) the remaining portion of the affidavit is not sufficient to support a finding of probable cause." *United States v. Mays*, No. 05-30811, 2006 U.S. App. LEXIS 24541, at *14-15 (5th Cir. Sept. 29, 2006) (citing *Franks*). At the suppression hearing, however, the Court found that there was no evidence that the allegations supporting the search warrant were false or made with reckless disregard for their veracity.[6] Instead, defendant merely challenges the warrant because of the amount of time that elapsed between the murder and the eventual search of the apartment. The state court commissioner that signed the search warrant found that probable cause existed to permit the search despite this lapse, and defendant has not presented evidence of a kind sufficient to rebut the presumption of the warrant's validity.

Apart from the prima facie validity of the search warrant, however, the Court also finds

---

[6]Suppression Hr'g Tr. at p. 73.

7

defendant's staleness arguments unpersuasive. Defendant correctly cites the Fifth Circuit's test for staleness:

> Two considerations have consistently appeared in this court's opinions on the issue of staleness. First, if the information of the affidavit clearly shows a long-standing, ongoing pattern of criminal activity, even if fairly long periods of time have lapsed between the information and the issuance of the warrant, the information need not be regarded as stale. Second, the nature of the evidence sought is also relevant. Courts are more tolerant of dated allegations if the evidence sought is of the sort that can reasonably be expected to be kept for long periods of time in the place to be searched.

*United States v. Pena-Rodriguez*, 110 F.3d 1120, 1130 (5th Cir. 1997); *see also United States v. Alvarez*, 451 F.3d 320, 332 (5th Cir. 2006). Though the Court finds no evidence of a long-standing, ongoing pattern of criminal activity, the Court does find that a handgun is evidence that could be reasonably expected to be kept at defendant's apartment for the amount of time that elapsed between the murder and the search. *See, e.g.*, *United States v. Lancaster*, 145 F. App'x 508, 513 (6th Cir. 2005) (deciding that affidavit was not stale because firearms are not perishable and that "those who own and possess firearms generally maintain them for long periods of time") (internal quotations omitted); *United States v. Jones*, 41 F. App'x 536, 538-39 (3d Cir. 2002) (finding affidavit not stale and noting that, "even absent any direct evidence of their location, firearms are likely to be kept in a suspect's residence") (internal quotations and citation omitted). Defendant's argument that the killer would be carrying the weapon and, therefore, the gun would not reasonably be found at the apartment, is unavailing.

For these reasons, defendant's motions are denied with respect to evidence recovered from defendant in connection with the June 6, 2002, arrest and subsequent search of the apartment.

## II. Traffic Stop on April 14, 2003

Defendant argues that Detective Williams's search of his person at the traffic stop on April 14, 2006, was illegal because the officer had no good cause to conduct a pat-down search. Defendant also argues that Detective Williams could not have reasonably believed that the objects in his pockets were weapons, nor was it immediately apparent that these objects were drugs. Defendant contends that this seizure, his arrest, and the subsequent seizure of the drugs and gun from the motor scooter were illegal and, therefore, the evidence recovered should be suppressed.

Considering that Detective Williams had a legitimate reason for conducting a traffic stop,[7] the Court turns first to the propriety of his decision to frisk defendant for weapons pursuant to *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). As stated above, where the government searches or seizes a defendant without a warrant, the government bears the burden of proving the constitutionality of the search or seizure by a preponderance of the evidence. A police officer may perform a "limited pat-down search[] . . . 'for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime.'" *United States v. Jenson*, No. 05-50683, 2006 U.S. App. LEXIS 21563, at *19 (5th Cir. Aug. 23, 2006) (quoting *Terry*, 392 U.S. at 27, 88 S. Ct. at 1883)). "There is no *Terry* violation 'if the

---

[7]At the suppression hearing, defense counsel argued that Detective Williams stopped defendant merely because he was suspicious of two African-American males traveling on a motor scooter. After reviewing the transcript of the hearing, the Court can find no instance in Detective Williams's testimony where he suggested that the race of the suspects motivated the traffic stop. Describing the incident, Detective Williams explained, "On that date, we were conducting another stop at Virgil and Whitney when we saw this scooter driven by two black males heading down Whitney, which caught our attention. As we both looked over, we saw them switch lanes without using a turn signal." Suppression Hr'g Tr. at p. 76. There is no credible evidence that race was a factor in this traffic stop, notwithstanding defense counsel's argument to the contrary. The traffic violation provided Detective Williams with a legitimate reason for the traffic stop.

searching officer can point to specific and articulable facts suggesting actual physical risk to himself or others.'"  *Id.* (quoting *United States v. Sink*, 586 F.2d 1041, 1048 (5th Cir. 1978)). The Fourth Amendment's reasonableness requirement is satisfied when police have a minimal level of objective justification for their actions, as shown by the totality of the circumstances. *United States v. Rideau*, 969 F.2d 1572, 1574 (5th Cir. 1992) (en banc) (citing *United States v. Sokolow*, 490 U.S. 1, 109 S. Ct. 1581, 1585, 104 L. Ed. 2d 1 (1989)).

Detective Williams testified that defendant appeared "nervous and shaking and sweaty" at the traffic stop[8] and that these traits led him to believe that defendant may be armed and dangerous. In support of his argument that Detective Williams did not have sufficient justification for the *Terry* frisk, defendant notes several Fifth Circuit cases in which the court held that mere nervousness, without other compelling factors, was not enough to establish a reasonable suspicion of criminal activity such that a police officer could prolong an investigative detention.  *See United States v. Portillo-Aguirre*, 311 F.3d 647, 656 n.49 (5th Cir. 2002) ("We have never held that nervousness alone is sufficient to create reasonable suspicion of criminal activity.  In fact, we often give little or no weight to an officer's conclusional statement that a suspect appeared nervous."); *see also United States v. Grier*, 127 Fed. Appx. 712, 714 (5th Cir. 2005) ("[N]ervousness alone may not support reasonable suspicion of drug trafficking . . . ."). Admitting that these holdings are not completely analogous to the issue before this Court, defendant argues that their reasoning should apply to *Terry* frisks as well.

The Court agrees that defendant's apparent nervousness and sweating at the traffic stop did not present Detective Williams with reason to believe that defendant was armed and

---

[8]Suppression Hr'g Tr. at p. 77.

10

dangerous.  Defendant's nervousness may simply have been caused by his confrontation with a law enforcement official.  "A stopped individual may be nervous for many reasons, and although it might be because the individual is trafficking drugs, the nervousness could equally be caused by the fact that the defendant is nervous about having committed a wide variety of other crimes, including the very traffic offense for which he was pulled over for."  *Grier*, 127 Fed. Appx. at 715.  In addition, even at almost 8 p.m., the mid-April temperature in Gretna may have been enough to cause defendant to sweat, regardless of any nervousness.  This behavior, by itself, could not have reasonably suggested to Detective Williams that defendant was armed.  Detective Williams provided no other justification for the pat-down.[9]

At the suppression hearing, the United States offered Judge Engelhardt's order in *United States v. Meredith*, No. 05-005, slip op. (E.D. La. Jul. 6, 2005), a case in which the court denied the defendant's motion to suppress.  There, the defendant had been stopped in his car by police after having been observed driving without operating taillights and erratically changing lanes.  One police officer observed the defendant moving around within the passenger compartment of the vehicle; concerned for their safety, the police conducted a pat-down of defendant and found a loaded gun in his back pocket.  In determining that the police officers' *Terry* frisk was reasonable considering the totality of the circumstances, Judge Engelhardt took into consideration the fact that the defendant was moving around in the passenger compartment of the vehicle, he exhibited a nervous demeanor, he was stopped in a high-crime area, and he had been changing lanes in and out of traffic between other vehicles.  *Id.* at 6.

---

[9] For example, there was no testimony that the stop was made in a high-crime area.  Similarly, there is no evidence that defendant, prior to stopping, made any suspicious movements toward the motor scooter's seat compartment.

The Court, however, fails to find that case persuasive on the facts presented. While both the defendant in *Meredith* and the instant defendant appeared nervous when stopped by police, Judge Englehardt did not specifically find that the *Meredith* defendant's nervousness was sufficient to justify the *Terry* frisk. Instead, the defendant's nervousness was but one factor that entered into Judge Engelhardt's calculus of the totality of the circumstances. Indeed, Judge Engelhardt noted that "nervousness alone cannot justify a *Terry* patdown." *Id.* at 5. The facts that supported Judge Engelhardt's decision are simply not present in the instant matter.

The United States also mentions, without elaboration, that Detective Williams asked defendant if he could perform the pat-down and that defendant agreed.[10] Consent must be free and voluntary. *United States v. Kelley*, 981 F.2d 1464, 1470 (5th Cir. 1993) (citation omitted). The United States, however, bears the burden of proving voluntary consent by a preponderance of the evidence. *United States v. Cooper*, 43 F.3d 140, 144 (5th Cir. 1995) (citing *United States v. Yeagin*, 927 F.2d 798, 800 (5th Cir. 1991); *United States v. Ponce*, 8 F.3d 989, 997 (5th Cir. 1993)). "Where consent is preceded by a Fourth Amendment violation, the government has a heavier burden of proving consent." *Kelley*, 981 F.2d at 1470 (citing *United States v. Ruigomez*, 702 F.2d 61, 65 (5th Cir. 1983)). In evaluating the voluntariness of consent, courts look to the totality of the circumstances. *Id.* The *Kelley* court enumerated six factors that are each relevant to, if not dispositive of, the question of voluntariness:

> (1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his right to refuse to consent; (5) the defendant's education and intelligence; and (6) the defendant's belief that no incriminating evidence will be found.

---

[10]Rec. Doc. No. 57, p. 3; *see also* Suppression Hr'g Tr. at 77.

*Id.*

The Court has been presented with no evidence to suggest that defendant's consent was voluntary. The other evidence that has been presented, though, suggests that the traffic stop may have presented a coercive situation in which defendant may not have believed that he had any ability to deny Detective Williams's request. Therefore, defendant's alleged consent to the pat-down will not be enough to permit the admission of the evidence seized.

Finally, the United States argues, in the alternative, that even if Detective Williams's pat-down search of defendant is found unlawful, the evidence found on his person and in the motor scooter is still admissible. The United States contends that the search of the seat compartment of the motor scooter was permissible as a lawful search for paperwork associated with the scooter, that the evidence is admissible pursuant to the "inevitable discovery doctrine," and that defendant had no expectation of privacy in the scooter because it did not belong to him. Each of these efforts, however, fails to persuade the Court.

The United States writes that, regardless of whether a suspect is under arrest, an "officer is justified in seeking registration papers, driver's license, and insurance papers for the vehicle . . . due to a valid traffic stop,"[11] citing *Kelley*, 981 F.2d at 1469, for this proposition. In that case, the court stated that the officers conducting the traffic stop "were entitled to request a driver's license and vehicle registration." *Id.* The court's use of the word "request," however, does not authorize a police officer to search through a suspect's vehicle without some other justification. The *Kelley* court, in connection with a discussion regarding the reasonableness of the detention, approved of the police officers' conversation with the defendant prior to a consent search; the

---

[11]Rec. Doc. No. 57, p. 4.

court did not indicate that the police officers were entitled to rifle through defendant's car without permission. The Fifth Circuit affirmed the district court's finding that the search was constitutional because the defendant consented to the search voluntarily, knowingly, and without coercion. *Id.* at 1471-72.

The United States also invokes the "inevitable discovery" doctrine, arguing that Detective Williams would have inevitably discovered the drugs and gun in the storage compartment of the motor scooter after (1) defendant personally retrieved the vehicle registration and insurance documents during the traffic stop, or (2) an inventory search of the motor scooter. In *Nix v. Williams*, the United States Supreme Court defined the inevitable discovery rule: "If the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means . . . then the deterrence rationale has so little basis that the evidence should be received." 467 U.S. 431, 444, 104 S. Ct. 2501, 2509, 81 L. Ed. 2d 377 (1984). The Fifth Circuit has held that "for the inevitable-discovery exception to apply the government must, by a preponderance of the evidence, establish (1) a reasonable probability that the contested evidence would have been discovered by lawful means in the absence of the police misconduct and (2) that the government was actively pursuing a 'substantial alternate line of investigation at the time of the constitutional violation.'" *United States v. Lamas*, 930 F.2d 1099, 1102 (5th Cir. 1991) (quoting *United States v. Cherry*, 759 F.2d 1196, 1205-06 (5th Cir. 1985), *cert. denied*, 479 U.S. 1056, 107 S. Ct. 932, 93 L. Ed. 2d 983 (1987)).

The United States' argument that the drugs and gun would have inevitably been discovered because defendant would have been obliged to open the seat compartment of the

14

motor scooter to retrieve the vehicle registration and insurance documents and, therefore, the inculpatory evidence would have been in the plain view of Detective Williams is not persuasive. The United States has presented little evidence that this occurrence would have been a reasonable probability; instead, the Court finds it just as likely that, even if defendant had been required to open this compartment, the evidence would have remained concealed from Detective Williams's view. Similarly, the Court finds no reasonable probability that, in the absence of the illegal pat-down, Detective Williams would have had any reason to tow the motor scooter and, as a result, conduct an inventory search of the vehicle.[12]

Because Detective Williams's patdown of defendant and subsequent search of the motor scooter incident to that arrest were improper, evidence recovered as a result of these unlawful searches must be suppressed. *United States v. Brown*, 448 F.3d 239, 244 (3d Cir. 2006) ("Any evidence obtained pursuant to an investigatory stop (also known as a 'Terry stop' or a 'stop and frisk') that does not meet [the *Terry*] exception must be suppressed as 'fruit of the poisonous tree.'") (citing *Wong Sun v. United States*, 371 U.S. 471, 487-88, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963)); *United States v. Kimball*, 25 F.3d 1, 5-6 (1st Cir. 1994) ("Thus, if the initial stop of the vehicle was illegal, evidence seized by virtue of that stop . . . may be subject to exclusion under the 'fruit of the poisonous tree' doctrine."); *United States v. Shoals*, No. 05-64, 2006 U.S. Dist. LEXIS 36959, at *14 (N.D. Ind. May 23, 2006) ("[I]f the search violated the Fourth Amendment, evidence retrieved during the patdown and [subsequent vehicle search] which, in turn, led to [defendant's] arrest . . . must be suppressed as fruit of the poisonous tree."); *United*

---

[12]Because the Court finds that the evidence seized from defendant at this April 14, 2003, traffic stop was tainted by Detective Williams's illegal search, the Court finds no need to address the United States' argument regarding defendant's alleged lack standing to challenge the search of the motor scooter.

*States v. Ross*, 827 F. Supp. 711, 719 (D. Ala. 1993) (holding that, because the officer's patdown search of defendant did not comport with the "plain feel" doctrine and was "clearly impermissible under *Dickerson*, . . . the resulting arrest and inventory search were tainted as infamous 'fruits of the poisonous tree.'")

Accordingly,

**IT IS ORDERED** that the motion and supplemental motion filed on behalf of defendant, Charles Sykes, to suppress evidence[13] are **GRANTED IN PART AND DENIED IN PART**. Defendant's motions are **DENIED** insofar as they seek to suppress evidence seized in connection with his June 6, 2002, arrest and subsequent search of the apartment; defendant's motions are **GRANTED** insofar as they seek to suppress evidence seized in connection with his April 15, 2003, arrest.

New Orleans, Louisiana, November ___2nd___, 2006.

                                             _____
                                                     **LANCE M. AFRICK**
                                             **UNITED STATES DISTRICT JUDGE**

---

[13] Rec. Doc. Nos. 27 and 44-3.