# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL DOCKET** |
| **VERSUS** | **No. 05-0046** |
| **CHARLES SYKES** | **SECTION I** |

## ORDER AND REASONS

Before the Court is a 28 U.S.C. § 2255 motion to vacate, set aside, or correct sentence filed on behalf of defendant, Charles Sykes ("petitioner"). For the following reasons, the motion is **DENIED**.

### *BACKGROUND*

On February 17, 2005, petitioner was indicted for possession with intent to distribute marijuana, cocaine, cocaine base, and heroin.[1] On September, 22, 2006, the Government filed a superseding indictment additionally alleging a violation of 18 U.S.C. § 924(c)(1)(A)(i) for possession of a firearm in furtherance of a drug trafficking crime.[2]

The charges against petitioner stem from an investigation into the murder of Charles Henry in April, 2002, in the breezeway of 2135 Lebouef Court in the Fisher Housing Project in New Orleans. As a result of its investigation, police obtained a search warrant for petitioner's residence located at 2125 Lebouef Court, Apartment 3A. During the June 6, 2002, search of this apartment, the police arrested petitioner and found the drugs and guns that formed the basis of his indictment.

---
[1] R. Doc. No. 1.
[2] R. Doc. No. 40.

As part of this application, petitioner questions the performance of his counsel leading up to and during the suppression hearing. As a result, the Court will briefly discuss the relevant portions of the police investigation.

On May 7, 2002, investigators interviewed Jessie Dillon ("Dillon"). Dillon reported that, at the time of the murder, he heard multiple gunshots and saw several people running from the scene of the crime. He identified two of the people running from the scene as "Mississippi" and "Sippy." He said he observed those two men and another individual flee up the stairs to 2125 Lebouef Court, Apartment 3A, where Sippy and Mississippi—who are brothers—resided with their mother. Dillon stated that Sippy had a gun in his hand at the time. He also stated that Sippy had a prominent tattoo of the word "Outlaw" on his neck.[3]

Detective Anthony Pardo, the officer assigned to investigate the homicide, testified at the suppression hearing that he presented Dillon with a photographic lineup at the May, 2002, meeting. Dillon identified a photograph of the person he saw holding a gun immediately after the murder. Due to an incorrect entry in the police computer, the police erroneously assumed such person to be petitioner. The address associated with this photograph was 2125 Lebouef Court, Apartment 3A—the same address that Dillon saw the gunman enter immediately following the murder. Based on this information, on June 4, 2002, the New Orleans police department obtained a search warrant for 2125 Lebouef Court, Apartment 3A, to recover the murder weapon, ammunition, and documents of occupancy.

Prior to serving the warrant on June 6, 2002, officers interviewed Edwin Brooks, who also stated that he had witnessed the murder of Charles Henry. Brooks was shown the same photographic lineup that was shown to Dillon, and he identified the same photograph. Following this interview, officers executed the search warrant at 2125 Lebouef Court, Apartment 3A. They

---

[3] Petitioner does not have such a tattoo.

2

found petitioner inside the apartment and arrested him. At the time of the arrest, petitioner identified himself as Charles Sykes. During a search of petitioner's person incident to his arrest, officers found a clear plastic bag containing cocaine. While searching the rest of the apartment, officers also recovered additional drugs, three handguns, and other items associated with drug trafficking.

On September 7, 2006, petitioner filed a motion to suppress the drugs and guns recovered from the apartment search. The basis of that motion was the erroneous entry in the police computer and the informants' testimony indicating that the person with the gun had a prominent tattoo. Evidence later established that the photograph used in the lineup was that of petitioner's brother, Matthew Sykes. Petitioner alleged that the probable cause for his arrest evaporated when the police noticed or should have noticed that he did not have the prominent tattoo described by informants.

After holding a hearing, this Court denied the motion to suppress the evidence found in the apartment search. The Court found that the evidence was recovered through good faith reliance on the photographic lineups and the officers' investigation. At the hearing, the Court did suppress drugs and a handgun found during an unrelated traffic stop that occurred in April, 2006.

Petitioner was tried by jury in June, 2007. Petitioner argued at trial that the drugs and guns found during the search of his apartment did not belong to him. During his direct examination, petitioner stated, "I don't distribute drugs."[4] The government argued that this opened the door and permitted it to introduce the handgun and drugs found during the April,

---

[4] R. Doc. No. 120, p. 186.

3

2006, traffic stop. Over petitioner's objection, the Court permitted the introduction of this evidence for the purposes of impeaching petitioner's testimony that he did not distribute drugs.[5]

On June 18, 2007, the jury found petitioner guilty of possession of cocaine with the intent to distribute in violation of 21 U.S.C. § 841(a)(1), possession of more than five grams of cocaine base with the intent to distribute also in violation of 21 U.S.C. § 841(a)(1), and possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i).[6] Pursuant to the sentencing guidelines, this Court sentenced petitioner to a term of imprisonment of 138 months.[7]

On June 19, 2007, petitioner appealed his conviction to the United States Court of Appeals for the Fifth Circuit.[8] On May 27, 2008, the Fifth Circuit affirmed this Court's judgment and petitioner's conviction became final.[9] On May 6, 2009, petitioner filed this timely motion pursuant to 28 U.S.C. § 2255, raising seven claims of ineffective assistance of counsel.[10]

## STANDARD OF LAW

**I.     Overview of 28 U.S.C. § 2255**

Title 28, United States Code, Section 2255 allows a prisoner to attack his sentence: (1) if it was imposed in violation of the Constitution or laws of the United States; (2) if a court was without jurisdiction to impose such sentence; (3) if the sentence was in excess of the maximum authorized by law; or (4) if the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). "Relief under § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned,

---

[5] Id. at 221.
[6] R. Doc. No. 113.
[7] Id.
[8] R. Doc. No. 114.
[9] R. Doc. No. 131.
[10] R. Doc. No. 136.

result in a complete miscarriage of justice." United States v. Segler, 37 F.3d 1131, 1133 (5th Cir. 1994) (quoting United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992) (per curiam)).

## II.     Ineffective Assistance of Counsel

The standard for judging the performance of counsel was established by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). In Strickland, the Court established a two-part test for evaluating claims of ineffective assistance of counsel that requires the petitioner to prove (1) deficient performance and (2) resulting prejudice. Strickland, 466 U.S. at 697. Deficient performance is established by "show[ing] that counsel's representation fell below an objective standard of reasonableness." Id. at 688. To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694; see also United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999). A "reasonable probability" is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

On federal habeas review, scrutiny of counsel's performance "must be highly deferential," and the Court will 'indulge a strong presumption that strategic or tactical decisions made after an adequate investigation fall within the wide range of objectively reasonable professional assistance." Moore v. Johnson, 194 F.3d 586, 591 (5th Cir. 1999) (citing Strickland, 466 U.S. at 689). In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial. Strickland, 466 U.S. at 689; Neal v. Puckett, 286 F.3d 230, 236-37 (5th Cir. 2002). "A court must indulge a 'strong presumption' that counsel's conduct falls within the wide range of reasonable professional assistance because it is all too easy to conclude that a particular act or

5

omission of counsel was unreasonable in the harsh light of hindsight." Bell v. Cone, 535 U.S. 685, 701 (2002) (citing Strickland, 466 U.S. at 689). Federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise. Strickland, 466 U.S. at 689.

The second prong of the Strickland test looks to the prejudice caused by counsel's deficient performance. This requires "a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." United States v. Mullins, 315 F.3d 449, 456 (5th Cir. 2002) (quoting Strickland, 466 U.S. at 687). "[T]he defendant must show that counsel's errors were prejudicial and deprived defendant of a 'fair trial, a trial whose result is reliable.'" United States v. Baptiste, No. 98-207, 2007 U.S. Dist. LEXIS 21388, at *11 n.6 (E.D. La. Mar. 26, 2007) (Engelhardt, J.) (quoting Strickland, 466 U.S. at 687). "This burden generally is met by showing that the outcome of the proceeding would have been different but for counsel's errors." Id.

A defendant must satisfy both prongs of the Strickland test in order to be successful on an ineffective assistance claim. See Strickland, 466 U.S. at 697. There is no reason for a court deciding an ineffective assistance of counsel claim to address these prongs in any particular order. Id. If it is possible to dispose of an ineffective assistance of counsel claim without addressing both prongs "that course should be followed." Id.

*DISCUSSION*

Petitioner's motion, alleging ineffective assistance of counsel, lists seven grounds for overturning his conviction. Four grounds are based on counsel's performance at petitioner's suppression hearing. The remaining three grounds address counsel's performance at trial.

**I.     Ineffective assistance of counsel during the suppression hearing**

Petitioner's suppression hearing arguments can be broken into two groups: (1) failure of counsel to investigate prior to the hearing; and (2) failure of counsel to call or cross-examine Jessie Dillon at the hearing.

A. Failure to investigate

Petitioner argues that his counsel failed to sufficiently investigate certain errors or discrepancies in the evidence that formed the basis of the warrant authorizing a search of his apartment.[11] He also argues that counsel failed to sufficiently investigate the possibility that Dillon—the witness whose testimony provided the probable cause for the warrant—was deliberately lying to police in an effort to hide his own misconduct. He argues that had his counsel undertaken this investigation, the evidence against him would have been suppressed.

A defendant's counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Smith v. Quarterman, 471 F.3d 565, 569 (5th Cir. 2006). An attorney's failure to investigate the case against the defendant and to interview witnesses can support a finding of ineffective assistance. See Bryant v. Scott, 28 F.3d 1411, 1415 (5th Cir. 1994). "A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of trial." United States v. Green, 882 F.2d 999, 1003 (5th Cir. 1989).

Petitioner's position is that if his counsel had conducted a sufficient investigation, the Court would have learned additional information about the informant Dillon.[12] The Court notes

---
[11] R. Doc. No. 136, p. 15.
[12] Petitioner also alleges that counsel was ineffective by failing to argue that the photo identified by Dillon had two different names. R. Doc. No. 136, p. 16. This fact was raised and argued by counsel in the motion to suppress. The Court found that the petitioner was incorrectly identified by the police computer, but that the officers were objectively reasonable in relying on the computer and the two informants. Given that the information was before the Court and raised by defense counsel, petitioner could not have been prejudiced by a failure to investigate this information.

7

that the facts highlighted by petitioner were introduced to the Court in the exhibits to the government's opposition to the motion to suppress.[13] As a result, petitioner was not prejudiced by the absence of these facts because they were before the Court when the motion to suppress was decided. Petitioner's counsel, however, did not reference these facts in either the motion to suppress or the reply to the government's opposition. The Court will assume for the purposes of deciding this motion that petitioner's ineffective assistance of counsel claim is based on a failure to raise these facts in the motion to suppress. Viewed this way, petitioner is effectively arguing that his counsel was ineffective for a failure to highlight the omission of certain facts from the affidavit supporting the search warrant.

Evidence obtained from a search is admissible where probable cause for a search warrant is founded on inaccurate information, so long as the officer's reliance on the warrant is objectively reasonable. Moreno v. Dretke, 450 F.3d 158, 169 (5th Cir. 2006) (citing United States v. Leon, 468 U.S. 897, 919-20 (1984)). A misstatement or omission renders the search invalid only where "the misrepresentations are the product of 'deliberate falsehood or of reckless disregard for the truth.'" Moreno 450 F.3d at 169 (quoting Franks v. Delaware, 438 U.S. 154, 171 (1978)). To determine whether facts omitted from a warrant affidavit are material to the determination of probable cause, courts insert the omitted facts into the affidavit and ask whether the reconstructed affidavit would still support a finding of probable cause. See, e.g., United States v. Martin, 615 F.2d 318, 328 (5th Cir.1980). The question is whether, under the totality of the circumstances, "there is a fair probability that the contraband or evidence of a crime will be found in a particular place." United States v. Froman, 355 F.3d 882, 889 (5th Cir. 2004) (quoting United States v. Byrd, 31 F.3d 1329, 1340 (5th Cir. 1994)).

---

[13] Compare R. Doc. No. 136 p. 15 with R. Doc. No. 47-8.

The search warrant that led to petitioner's arrest was supported by the affidavit of Detective Pardo. In the affidavit, Pardo recounts his interview with Dillon on May 6, 2002. Dillon describes the persons he was with at the time of the murder of Charles Henry. Dillon provided the street names of the five individuals he saw running immediately after the shooting from 2135 Lebouef Court to the third floor corner apartment at 2125 Lebouef. Pardo describes the circumstances surrounding the photographic lineup and recounts Dillon identifying that which police assumed to be petitioner's photograph. The affidavit identifies petitioner's address as 2125 Lebouef Court, Apartment 3A. The other individual identified by Dillon also resided in Apartment 3A. Additionally, Pardo wrote that the shell casings located at the scene of the murder corroborated Dillon's description of the handgun observed in Sippy's hand.

Petitioner asserts that the following facts were not present in the affidavit supporting the search warrant: (1) Dillon was a felon in possession of a firearm; (2) Dillon was a known drug user; (3) Dillon initially gave officers a false name; (4) Dillon was a suspect in the investigation; (5) Dillon's information conflicted with other eyewitness accounts with respect to the number of people fleeing the scene; and (6) Dillon initially stated that "Mississippi" had the gun, but then stated that the gun was in "Sippy's" hand.[14]

The first three facts advanced by petitioner are designed to undercut Dillon's credibility as a witness. While those facts do make Dillon appear less reliable, "the credibility of an informant's tip is strengthened if made in great detail, thus evincing a strong basis for the informant's knowledge." United States v. Reyes, 792 F.2d 536, 539 (5th Cir. 1986) (citations omitted). Further, an informant's tip can be corroborated by independent police work. Id. The tip is also buttressed if based on personal observation rather than hearsay. Id.

---

[14] R. Doc. No. 136, p. 15.

Dillon's information was based on his own direct observations and it was made in great detail. He offered street names for each of the suspects, a description of the correct type of weapon, the relationship between some of the suspects, as well as ancillary details such as the individuals he was with and time of day. Dillon's information was corroborated by the fact that both individuals he identified in the photographic lineups lived at 2125 Lebouef Court, Apartment 3A. This is the same residence into which he reported seeing the gunmen run.

Petitioner's fourth argument, that Dillon was a suspect in the investigation, is unsupported by the record. A review of the documents highlighted by petitioner indicates that a confidential source told police that Dillon may have picked the murder weapon off the ground after the victim was shot.[15] The same source, however, also told police that Sippy had shot the victim.[16] Prior to interviewing Dillon, officers learned that Sippy, as well as an accomplice named by the confidential source, lived at 2125 Lebouef Court, Apartment 3A—the residence to which the gunmen fled.[17] All of this information was confirmed to officers by another confidential source.[18] There is no evidence that Dillon was a suspect at the time Detective Pardo completed the affidavit.

Petitioner's fifth argument is that Dillon told officers that he saw a different number of people running from the scene than other eyewitnesses did. The inclusion of this fact in the affidavit would not have vitiated probable cause. Eyewitnesses—especially in the immediate aftermath of a frightening and dangerous event—often will contradict each other with respect to certain details. The fact that Dillon named a different number of people running from the scene

---

[15] R. Doc. 47-8, p. 1-2. The victim's mother also suggested that Dillon might somehow be "involved in her son's death. Id.
[16] Id. at p. 2.
[17] Id.
[18] Id. at p. 1.

may have been a fault of memory or simply a different perspective. That fact is not enough to undermine the affidavit.

Petitioner's final argument is that Dillon initially said that the gun was in Mississippi's hand, but he later said it was in Sippy's hand. Even ignoring the fact that the names are similar and Dillon simply may have misspoken, petitioner's argument still fails. The affidavit contains information that Dillon identified a photograph of a person officers believed to be petitioner. Dillon's uncertainty with the name does not change the identification that he made. Probable cause still would have been present even with the inclusion of this fact in the affidavit.[19]

Petitioner's counsel filed a well-grounded motion to suppress and participated thoroughly at the suppression hearing. In fact, counsel succeeded in getting some of the evidence suppressed. Even if his performance had been deficient, a finding this Court does not make, petitioner's claims concerning his counsel's failure to conduct a thorough investigation are without merit because the information identified by petitioner would not have changed the outcome of the hearing. Petitioner cannot demonstrate <u>Strickland</u> error with respect to either prong of the <u>Strickland</u> test.

    B. <u>Failure to interview or cross-examine Dillon</u>

Petitioner argues that his counsel was ineffective for failing to call or cross-examine Dillon. The Court notes that Dillon was not called by either party at either the suppression hearing or the trial. Therefore, his counsel could not be ineffective for failure to cross-examine Dillon. Petitioner further asserts that had his counsel called Dillon to testify, Dillon would have revealed his mixed motives and the conflicting information he gave to police. Petitioner argues

---

[19] The affidavit also contained information that Sippy and Mississippi were brothers who shared an address. Even if Dillon was incorrect and the gun was actually in Mississippi's hand, the police would still have had probable cause to search 2125 Lebouef Court, Apartment 3A.

11

that this testimony would have led to suppression of the evidence recovered as a result of the search warrant.[20]

Generally, "[c]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." Boyd v. Estelle, 661 F.2d 388, 390 (5th Cir. 1981) (quoting Buckelew v. United States, 575 F.2d 515, 521 (5th Cir. 1978)). "Moreover, [the defendant] must overcome a strong presumption that [counsel's] decision in not calling . . . a witness was a strategic one." Murray v. Maggio, 736 F.2d 279, 282 (5th Cir. 1984) (citations omitted). Additionally, the defendant must show a reasonable probability that the uncalled witness would have made a difference to the result. Bray v. Quarterman, 265 Fed.Appx. 296, 298 (5th Cir. 2008).

Dillon's testimony about his motives would not have changed the result of the suppression hearing. "Probable cause is determined on the basis of the facts available to the officer at the time of the arrest." Evett v. DETNTFF, 330 F.3d 681, 688 (5th Cir. 2003) (internal quotation marks and citation omitted). Information learned at the suppression hearing about Dillon's motives would not change the information available to the officers at the time of the arrest. The Court concluded that the arrest of petitioner was objectively reasonable because they reasonably relied on two witnesses who both chose the same photograph from a lineup.

Similarly, Dillon's testimony that he gave conflicting information to police would not have changed the result of the hearing. The police had a separate witness corroborate the information provided by Dillon. Additionally, other facts and circumstances—most notably the fact that the address associated with the two men identified by Dillon was identical to the address

---

[20] Petitioner also argues that Dillon would have been forced to admit that the person he chose in the photographic lineup was not petitioner. As this information was conceded by the government, petitioner was not prejudiced by the absence of this testimony.

that the suspects entered immediately after the shooting—supported Dillon's information. Because petitioner was not prejudiced by the absence of Dillon's testimony at the suppression hearing, he cannot succeed on a claim that his counsel was ineffective for failing to call him.

## II. Ineffective assistance at trial

Petitioner raises three claims of ineffective assistance related to counsel's performance at trial: (1) failure to give notice of a fingerprint expert that led to the expert's testimony being excluded;[21] (2) failure to object to the Court's exclusion of the photographic lineups at trial; and (3) failure to prepare defendant to testify. At the outset, the Court notes that the evidence against petitioner was strong. During a search of petitioner's apartment, police found petitioner hiding in a back bedroom. A search of the bedroom revealed drugs and guns and a search of petitioner's person revealed more drugs. While petitioner argued at trial that the drugs found in the apartment did not belong to him, the circumstances of his arrest, as well as the drugs on his person, undercut the persuasiveness of that argument.

### A. <u>Failure to give notice of fingerprint expert</u>

At trial, the Court excluded a potential defense witness, Mulligan, because defense counsel failed to provide adequate notification of the intent to call the expert witness.[22] Counsel stated that the expert would testify that two other individuals had been arrested in the same apartment for similar charges four months prior to petitioner's arrest.[23]

The exclusion of Mulligan's testimony did not prejudice petitioner because the jury heard substantively similar testimony. Defense counsel called Detective Maurice Palmer for the

---

[21] Petitioner argues that had the testimony of the fingerprint expert been admitted, the evidence found during the search of his apartment would have been suppressed. The Court notes that there was no attempt to call any fingerprint expert during the suppression hearing. At trial, the Court did exclude the testimony of a potential fingerprint expert, Nick Mulligan ("Mulligan"), because defense counsel failed to list him as an expert. The Court will proceed under the assumption that petitioner's claim is related to the exclusion of Mulligan at trial.
[22] R. Doc. No. 120, p. 138.
[23] R. Doc. No. 120, pp. 89-90.

13

express purpose of testifying about the previous arrest.[24] While the Court did not permit Detective Palmer to testify as to the identity of the two individuals arrested,[25] he told the jury that in February, 2002—four months prior to petitioner's arrest—he executed a search warrant at 2125 LeBoeuf Court, Apartment 3A.[26] During the execution of this warrant, officers arrested two individuals and found crack cocaine and two handguns. Further, during the cross-examination of Detective Pardo, defense counsel elicited the fact that two other people had a connection to the apartment where petitioner was arrested.[27] Pardo also admitted that he could not be sure who had been in the apartment during the hours prior to the execution of the search warrant.[28]

The only evidence that petitioner sought, but failed, to present to the jury was the identity of the two individuals arrested. The omission of this fact was not likely to change the outcome of the proceeding especially since the jury learned of the circumstances of the earlier arrest. As such, petitioner has not satisfied the prejudice prong of the Strickland test with respect to this claim.

   B.  Failure to object to the exclusion of photographic lineups

Petitioner argues that counsel was ineffective for failing to object to the Court's ruling preventing the photographic lineups from being used at trial.[29] He does not assert how this evidence would have changed the outcome of the trial other than a general assertion that the evidence "would have aided substantially in exonerating him."[30]

---

[24] Id. at 139.
[25] Id. at 138.
[26] Id. at 142.
[27] Id. at 102.
[28] Id.
[29] R. Doc. No. 136, p. 19.
[30] Id.

It is unclear what prejudice petitioner suffered from the failure to introduce these photographs. Petitioner argues that the photographs were relevant to his "misidentification defense." While he had a non-frivolous argument at the suppression hearing that the informants misidentified him, such evidence would be relevant at trial only to the extent that he was being tried for the murder of Charles Henry. At trial, the main defense asserted by counsel was that the drugs and guns found during the June, 2002, search belonged to another individual. The photographic lineups would not have assisted this defense. Petitioner cannot establish that the introduction of these lineups—which would also have led to the jury learning of petitioner's suspected involvement in the murder of Charles Henry—would have impacted the outcome of the proceeding. Petitioner has failed to establish prejudice with respect to this claim.

   C.  Failure to prepare defendant to testify

Petitioner's final argument is that his counsel failed to adequately prepare him to testify at trial.[31] According to petitioner, because he was not prepared to testify, his testimony led to the introduction of evidence seized during the unrelated April, 2006, traffic stop. As previously noted, such evidence was suppressed.

Petitioner argues that had counsel adequately represented him, he would have either (1) elected not to testify or (2) circumscribed his testimony to avoid opening the door to the impeachment evidence. While the introduction of the evidence from the traffic stop certainly hurt petitioner's case, it did not prejudice him for purposes of the Strickland analysis because petitioner cannot prove that the outcome would have been different absent counsel's alleged errors.

As stated above, petitioner's defense at trial was that the drugs and guns found in the apartment did not belong to him. This defense was directly contradicted by the evidence

---

[31] Id.

introduced at trial. The jury was presented with evidence that drugs were found on petitioner's person at the time of his arrest.[32] Additionally, the jury learned that, when officers knocked on his door to execute the search warrant, petitioner did not answer the door, ran through the apartment, and locked himself in a back bedroom that was empty except for some clothes, two handguns, and various drug paraphernalia.[33]

If petitioner had elected not to testify, the jury would have been given no explanation to support petitioner's theory that despite the fact that he was the only person present in the apartment containing drugs and guns, those drugs and guns did not belong to him. Petitioner cannot credibly argue that under that scenario there is "a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." United States v. Mullins, 315 F.3d 449, 456 (5th Cir. 2002) (quoting Strickland, 466 U.S. at 687).

Alternatively, petitioner argues that he could have testified and cabined his answers to avoid opening the door to the impeachment evidence. In essence, petitioner argues that if he had been sufficiently prepared by counsel, he would not have testified as he did. However, even if petitioner's counsel refrained from asking him if he distributed drugs, petitioner could not have avoided those types of questions on cross-examination. This argument also fails to demonstrate Strickland prejudice.

*CONCLUSION*

Accordingly, and for the reasons state above,

**IT IS ORDERED** that petitioner's motion pursuant to § 2255 is **DENIED** and that petitioner's application for relief pursuant to § 2255 is **DISMISSED WITH PREJUDICE**.

---

[32] R. Doc. No. 119, p. 142.
[33] R. Doc. No. 119, p. 139-46.

New Orleans, Louisiana, August 10, 2009.

_____
**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**